**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| YERKO ANTONIO MOLINA,　　　　) | |
| 　　　　　　　　　　　　　　　) | |
| 　　　　Petitioner,　　　　　) | |
| 　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　) | Civil Action No. 07-192 |
| 　　　　　　　　　　　　　　　) | |
| GERALD L. ROZUM, Superintendent,　) | Magistrate Judge Lisa Pupo Lenihan |
| SCI-Somerset, DISTRICT ATTORNEY ) | |
| OF CUMBERLAND COUNTY,　　　) | |
| PENNSYLVANIA, ATTORNEY　　) | |
| GENERAL OF PENNSYLVANIA,　　) | |
| 　　　　　　　　　　　　　　　) | |
| 　　　　Respondents.　　　　) | |

**MEMORANDUM OPINION**

Petitioner Yerko Antonio Molina ("Molina"), a state prisoner incarcerated at the State

Correctional Institution in Somerset, Pennsylvania ("SCI-Somerset"), has filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the petition will

be denied.

**I.    Procedural History**

On September 2, 2004,[1] after a jury trial conducted in the Court of Common Pleas of

Cumberland County, Pennsylvania, before Judge Edward E. Guido (the "trial judge"), Molina

was convicted of attempted murder, aggravated assault, simple assault, and recklessly

endangering another person.  Doc. No. 10-4, p. 3.  He was acquitted of operating a vehicle

without a driver's license.  *Id.*  He was sentenced to an aggregate of nine and one-half years to

twenty years in prison on October 6, 2004.  *Id.*  Five days later, pursuant to an agreement

---

[1]The entire transcript of the trial has not been submitted into evidence.  The trial apparently began on
September 1, 2004, and concluded on September 2, 2004.  Doc. No. 10-5, p. 1.

reached by the parties, the trial judge modified Molina's sentence to an aggregate of eight and one-half years to eighteen years in prison.  *Id.*  Molina filed a post-sentence motion on October 13, 2004.  *Id.*  On January 28, 2005, the trial judge modified Molina's sentence to an aggregate of eight and one-half years to seventeen years in prison.  *Id.*

Molina did not directly appeal his conviction and sentence to the Pennsylvania Superior Court.  On February 16, 2005, he filed a timely *pro se* petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA") [42 Pa. Cons. Stat. § 9541 *et seq.*].  *Id.* Molina alleged that his trial counsel, Gregory Abeln ("Abeln"), had been ineffective.  A hearing was held before the trial judge on June 2, 2005.  Doc. No. 10-6.  Molina, who was represented by counsel, appeared and testified at the hearing.  *Id.*, pp. 13-20.  Testimony was also taken from Abeln and David Freed ("Freed"), the First Assistant District Attorney who had prosecuted Molina.  *Id.*, pp. 4-12, 20-25.  The trial judge denied Molina's PCRA petition.

Molina appealed the denial of his PCRA petition to the Superior Court.  On July 19, 2005, he filed a "concise statement of the errors complained of on appeal" pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  Doc. No. 10-2, pp. 23-24.  The only issue raised in this statement was Abeln's alleged ineffectiveness for failing to object to multiple references at trial to Molina's status as an illegal alien.  *Id.*, p. 23.  In his brief to the Superior Court, Molina argued only that Abeln had been ineffective for permitting the jury to hear about his immigration status.  *Id.*, pp. 7-19.  No other issues were placed before the Superior Court.  In an opinion dated April 6, 2006, the Superior Court held that Abeln's representation of Molina at trial had not been ineffective.  *Commonwealth v. Molina*, 897 A.2d 1190 (Pa.Super.Ct. 2006). The Pennsylvania Supreme Court denied Molina's petition for allowance of appeal on July 27,

2

2006.  *Commonwealth v. Molina*, 903 A.2d 1233 (Pa. 2006).

On July 27, 2007, Molina filed the instant petition for a writ of habeas corpus.  Doc. No. 1.  In accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to have this matter resolved by a United States Magistrate Judge.  Doc. No. 17.

## II.    **Background**

Molina and Brenda Molina ("Brenda") were co-workers for an employer located in Carlisle, Pennsylvania.[2]  Doc. No. 10-5, p. 33.  Molina, a Chilean national, was an illegal alien. He evidently worked under the alias of "Samuel Feliciano" in order to avoid detection while maintaining a job.  Doc. No. 10-4, p. 4.  In late 2001, Molina and Brenda started dating.  Doc. No. 10-5, pp. 32-35.  Molina moved into Brenda's apartment in Newville, Pennsylvania.  *Id.*, p. 34.  At some point in 2002, Molina and Brenda moved in with two friends who were residing in Mechanicsburg, Pennsylvania.  *Id.*

In late 2002, Molina lost his job because of attendance-related problems.  Doc. No. 10-4, p. 3.  Brenda, however, was still employed.  *Id.*  Molina asked Brenda to take off from work in order to travel to Canada for a car show.  *Id.*  They went to Canada, where they were asked to produce identification information.  *Id.*  Although Brenda was able to produce the requested information, Molina was not.  *Id.*  The Canadian authorities apparently instructed Molina that he could not proceed further.  *Id.*  When Molina and Brenda attempted to return to the United States, Molina was temporarily detained.  *Id.*, p. 4.  Fearing that he would be deported to Chile, Molina told Brenda that he would be able to remain in the United States if she would marry him. Doc. No. 10-5, p. 38.  Molina and Brenda decided to get married.  *Id.*  They ultimately got

---

[2]The name of the employer was "Ross."  Doc. No. 10-5, p. 33.  The record is otherwise unclear as to the precise entity that employed Molina and Brenda.

married on January 3, 2003. *Id.*, p. 32. They continued to reside in Mechanisburg. *Id.*, pp. 38-39.

The marriage apparently began to deteriorate rapidly. One day in late 2003, when Brenda returned home, Molina asked her where she had been. *Id.*, p. 39. Brenda reacted by telling Molina to leave the residence. *Id.* In response to questions posed to her by Molina, Brenda stated that she was "seeing" and "sleeping with" somebody else. *Id.*, pp. 39-40.

On December 18, 2003, Robert Yost, Jr. ("Yost"), a member of the Newville Special Fire Police, received an urgent instruction to respond to what was believed to have been an automobile accident involving two vehicles. *Id.*, p. 6. The reported "accident" had occurred on Brandy Run Road in Newville. *Id.* When he arrived at the scene, Yost observed two cars on the right side of the road. *Id.*, p. 7. A woman standing nearby indicated to him that the two individuals involved in the "accident" had been badly injured. *Id.* Nevertheless, Yost did not notice any significant damage to the two vehicles. *Id.*, pp. 7-8.

When Yost approached the vehicles, he found one of them empty and the other occupied. *Id.*, p. 8. Peering into the occupied vehicle, which was a blue compact car, Yost found Molina on top of Brenda in the front seat. *Id.* The scene was very bloody. *Id.* A knife was lying on the passenger's side floorboard. *Id.* Yost contacted police and emergency medical personnel and alerted them to a probable stabbing. *Id.* Only the front driver's side window was partially down. *Id.*, p. 8. The other windows of the car were closed. *Id.* Yost yelled into the partially opened window. *Id.*, p. 9. He noticed no reaction from Molina, but Brenda opened her eyes and made "eye contact" with him. *Id.* Yost assured Brenda that help was on the way. *Id.*

4

Some volunteer firefighters arrived on the scene shortly thereafter.  David Bobb ("Bobb") opened the driver's side door and grabbed Molina.  *Id.*, p. 24.  Chris Darhower ("Darhower"), an emergency medical technician, opened the passenger's side door and grabbed the knife.  *Id.*  He handed the knife to William Stum ("Stum"), who proceeded to lay it next to a nearby tree.  *Id.*, p. 30.  Molina and Brenda were subsequently removed from the car and transported in ambulances for emergency medical treatment.  They both survived.  Molina was ultimately charged with attempting to take Brenda's life.

According to Brenda's testimony at Molina's trial, the incident of December 18, 2003, began when Molina rammed the right front passenger's side of his vehicle into the left front driver's side of her vehicle.  *Id.*, pp. 41-42.  When Brenda opened the driver's side door of her car, Molina was standing "right there" with a knife.  *Id.*  As Brenda turned to look at Molina, he cut the left side of her neck with the knife.  *Id.*, p. 43.  Molina then proceeded to cut his own neck.  *Id.*, pp. 43-44.  Brenda started to kick Molina in the chest, telling him that she loved him.  *Id.*, p. 44.  Molina stabbed himself in the chest.  *Id.*, p. 45.  Molina fell on top of Brenda, and the door to the car closed.  *Id.*, pp. 44-45.  At some point during the struggle, Brenda's right hand was cut with the knife.  *Id.*, p. 46.  Brenda struggled to breathe when Molina was on top of her.  *Id.*, p. 48.  She pushed his head up, but it "flopped back down."  *Id.*  Molina apparently lost consciousness while lying on top of Brenda.  *Id.*, pp. 47-48.

During the trial, Abeln attempted to show that Brenda had been the aggressor.  Doc. No. 10-6, pp. 8-9.  The jury nevertheless believed Brenda's testimony.  Molina was convicted of attempted murder, aggravated assault, simple assault and recklessly endangering another person.  Doc. No. 10-4, p. 3.

III.   <u>**Standards of Review**</u>

A.   **Exhaustion and Procedural Default**

The exhaustion requirements applicable to claims asserted in a federal habeas corpus

petition are rooted in subsections (b) and (c) of 28 U.S.C. § 2254, which provide:

**§ 2254.  State custody; remedies in Federal courts**

\*\*\*
(b)(1) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears
that--
(A) the applicant has exhausted the remedies available in the courts of the State;
or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of
the applicant.
(2) An application for a writ of habeas corpus may be denied on the merits,
notwithstanding the failure of the applicant to exhaust the remedies available in
the courts of the State.
(3) A State shall not be deemed to have waived the exhaustion requirement or be
estopped from reliance upon the requirement unless the State, through counsel,
expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in
the courts of the State, within the meaning of this section, if he has the right under
the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)-(c).  Consistent with this statutory mandate, each claim that a petitioner in

state custody attempts to present to a federal court in a habeas corpus proceeding must have been

"fairly presented" to each level of the applicable State's judiciary.  *Lines v. Larkins*, 208 F.3d

153, 159 (3d Cir. 2000).  "To 'fairly present' a claim, a petitioner must present a federal claim's

factual and legal substance to the state courts in a manner that puts them on notice that a federal

claim is being asserted."  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  Federal

courts typically dismiss without prejudice claims that have not been properly presented to the

state courts, thereby providing petitioners with an opportunity to exhaust such claims. *Lines*, 208 F.3d at 159-160.

Where a claim asserted in a habeas corpus proceeding has not been presented to the state courts, the statutory exhaustion requirement can be satisfied on the alternative ground that there is "an absence of *available* State corrective process." 28 U.S.C. § 2254(b)(1)(B)(i)(emphasis added). This alternative ground requires a showing that state procedural rules preclude the petitioner from exhausting his or her claims in the state courts. *Lines*, 208 F.3d at 160. In order for the exhaustion requirement to be satisfied on this ground, however, the applicable procedural rules must "clearly foreclose" review of the petitioner's unexhausted claims by the state courts. *Whitney v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002). It is not sufficient for the petitioner to show that it is "unlikely" that further state remedies are available. *Id.*

The mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits of his or her claims. *Lines*, 208 F.3d at 160. Claims deemed to have been exhausted because of a state procedural bar are procedurally defaulted, precluding a federal court from proceeding to address them further. *Id.* In *Cone v. Bell*, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that "is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002). In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to "ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. When a petitioner fails to properly raise his federal claims in state court, he deprives the

7

> State of "an opportunity to address those claims in the first instance" and
> frustrates the State's ability to honor his constitutional rights. *Id.*, at 732, 748,
> 111 S.Ct. 2546, 115 L.Ed.2d 640.  Therefore, consistent with the longstanding
> requirement that habeas petitioners must exhaust available state remedies before
> seeking relief in federal court, we have held that when a petitioner fails to raise
> his federal claims in compliance with relevant state procedural rules, the state
> court's refusal to adjudicate the claim ordinarily qualifies as an independent and
> adequate state ground for denying federal review.  See *id.*, at 731, 111 S.Ct. 2546,
> 115 L.Ed.2d 640.

*Cone*, 129 S.Ct. at 1780 (brackets in original).  This does not mean, however, that federal habeas corpus review is barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner.  *Id.*  The adequacy of a given state procedural rule to bar a federal court from reaching the merits of a petitioner's claim is a federal question.  *Wright v. Georgia*, 373 U.S. 284, 288-293 (1963).  A state procedural rule can preclude federal habeas corpus review only if it is "firmly established" and "consistently and regularly applied" by the State's courts.  *Kindler v. Horn*, 542 F.3d 70, 78 (3d Cir. 2009).  "In addition, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases."  *Id.* at 79.  "[A]n occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate."  *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995).  A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases."  *Dugger v. Adams*, 489 U.S. 401, 410, n. 6 (1989).

In certain instances, a federal court may entertain claims that would ordinarily be subject to procedural default.  Because a writ of habeas corpus is an equitable remedy, the Supreme Court has found it inappropriate to rigidly apply the doctrine of *res judicata* in this context.  *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  A procedural default can be excused upon a showing

of "cause" for the default and resulting "prejudice" to the petitioner. *Johnson v. Pinchak*, 392 F.3d 551, 563 (3d Cir. 2004)("A procedural default generally bars review of a federal habeas corpus petition *absent a showing of cause and prejudice*.")(emphasis added). Cause for not exhausting a claim exists where an external impediment, "whether it be government interference or the reasonable unavailability of the factual basis for the claim," prevents the petitioner from exhausting the claim during the pendency of state proceedings. *McCleskey v. Zant*, 499 U.S. 467, 497 (1991). If a petitioner can establish "cause" for procedurally defaulting a claim, he or she must shoulder the additional burden of showing "not merely that the errors at his [or her] trial created a *possibility* of prejudice, but that they worked to his [or her] *actual* and substantial disadvantage, infecting his [or her] trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)(emphasis in original). If a procedural default results from the ineffective assistance of counsel, the Sixth and Fourteenth Amendments require that responsibility for the default be imputed to the State, which may not "[conduct] trials at which persons who face incarceration must defend themselves without adequate legal assistance." *Murray v. Carrier*, 477 U.S. 478, 488 (1986)(brackets in original), quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). Nonetheless, an error by the petitioner's attorney can constitute "cause" for a procedural default only where it is sufficiently egregious to constitute a violation of the Sixth and Fourteenth Amendments under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hull v. Freeman*, 991 F.2d 86, 91 (3d Cir. 1993).

Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a fundamental miscarriage of justice.

*Johnson*, 392 F.3d at 564.  This exception to the procedural default doctrine is based on the principle that, in certain instances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray v. Carrier*, 477 U.S. 478, 495 (1986), quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982).  The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant.  *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992).  In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.  *Johnson*, 392 F.3d at 564.

In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated.  *Schlup*, 513 U.S. at 324.  "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  *Id.*  If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence."  *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004).  This standard "does not merely require a showing that a reasonable doubt [as to the petitioner's guilt] exists in the light of the new evidence, but rather that no reasonable juror would have found the [petitioner] guilty."  *Schlup*, 513 U.S. at 329.  "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors."  *House v. Bell*, 547 U.S. 518, 538

10

(2006).  While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. *Id.*

In the habeas corpus context, a federal court sits to ensure that an individual is not imprisoned in violation of the Constitution and laws of the United States, "not to correct errors of fact."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  Consequently, a finding of "actual innocence" is not an independent ground for habeas corpus relief, but rather a "gateway" through which a petitioner can pass to have a federal court consider underlying claims that would otherwise be subject to procedural default.  *Id.* at 404.  In the absence of new evidence of the petitioner's innocence, the existence of an underlying constitutional violation provides a federal court with no basis for adjudicating a procedurally defaulted claim.  *Goldblum v. Klem*, 510 F.3d 204, 225-226 (3d Cir. 2007).  Only after the presentation of *new* evidence may a federal court proceed to consider whether, in light of *all* relevant evidence, it is more likely than not that no reasonable juror would vote to convict the petitioner of the crime for which he or she is incarcerated.  *House*, 547 U.S. at 537-539; *Goldblum*, 510 F.3d at 225-226.

   **B.     Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence."  U.S. CONST., AMEND. VI.  The Counsel Clause of the Sixth Amendment is applicable to the States by virtue of the Due Process Clause of the Fourteenth Amendment.  *Gideon v. Wainwright*, 372 U.S. 335, 342-345 (1963).  "It has long been recognized that the right to

11

counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759,

771, n. 14 (1970)(emphasis added).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the

proper standards for determining when a defendant's trial counsel is ineffective.  Speaking

through Justice O'Connor, the Supreme Court explained:

> A convicted defendant's claim that counsel's assistance was so defective as to
> require reversal of a conviction or death sentence has two components.  First, the
> defendant must show that counsel's performance was deficient.  This requires
> showing that counsel made errors so serious that counsel was not functioning as
> the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.  Unless a defendant makes both
> showings, it cannot be said that the conviction or death sentence resulted from a
> breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  The first component of the *Strickland* standard requires an inquiry

into whether the performance of a defendant's counsel has fallen "below an objective standard of

reasonableness."  *Id.* at 688.  "The proper measure of attorney performance remains simply

reasonableness under prevailing professional norms."  *Id.*  The second component requires an

inquiry into the impact that an identified deficiency had on the defendant's trial.  In order to set

aside a conviction, a defendant must show that "there is a *reasonable probability* that, but for

[his or her] counsel's unprofessional errors, the result of the proceeding would have been

different."  *Id.* at 694 (emphasis added).  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Id.*  In determining whether a defendant has been

prejudiced by constitutionally deficient representation, a court must consider "the totality of the

evidence" heard by the finder of fact.  *Id.* at 695.  In situations where it is clear that a defendant

cannot show that he or she has been prejudiced, a court is free to dispose of the case on that ground without deciding whether the representation provided to that defendant was constitutionally deficient.  *Id.* at 697.

The Supreme Court has construed the Due Process and Equal Protection Clauses of the Fourteenth Amendment to include the right of a convicted individual to have the assistance of counsel for a first-level appeal provided by the State as a matter of right.  *Halbert v. Michigan*, 545 U.S. 605, 609-610 (2005).  Because this right to appellate counsel is grounded in the Fourteenth Amendment rather than in the Sixth Amendment, its dimensions are somewhat different than those of the right to trial counsel guaranteed under the Counsel Clause.  *Martinez v. Court of Appeal of California*, 528 U.S. 152, 154-164 (2000).  Nevertheless, in *Evitts v. Lucey*, 469 U.S. 387 (1985), the Supreme Court held that a first-level appeal provided as a matter of right is not adjudicated in accordance with the Constitution "if the appellant does not have the *effective* assistance of an attorney."  *Evitts*, 469 U.S. at 396 (emphasis added).  Therefore, an appellant has a constitutional right to the effective assistance of counsel when pursuing a non-discretionary appeal that is similar to the right to the effective assistance of counsel afforded by the Counsel Clause to a defendant subjected to a criminal trial.  An individual alleging that his or her appellate counsel was ineffective must satisfy the *Strickland* standard in order to obtain relief.  *United States v. Mannino*, 212 F.3d 835, 840, n. 4 (3d Cir. 2000).

IV.    **Discussion**

  A.    **The Statutory Exhaustion Requirement**

In order to establish his entitlement to habeas corpus relief, Molina must first show that he "has exhausted the remedies *available* in the courts" of the Commonwealth of Pennsylvania.

13

28 U.S.C. § 2254(b)(1)(A)(emphasis added).  In *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-846 (1999), the United States Supreme Court held that discretionary review before the highest court of a State is generally "available" to a petitioner even where that court is not obligated to entertain his or her appeal.  The Supreme Court went on to clarify, however, that "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is unavailable."  *O'Sullivan*, 526 U.S. at 847-848.  In a concurring opinion, Justice Souter indicated that the decision in *O'Sullivan* did not require a petitioner to exhaust a procedure declared by the State to be outside of the "standard review process."  *Id.* at 850 (Souter, J., concurring).

On May 9, 2000, the Pennsylvania Supreme Court issued *In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 ("Order 218"), which provided that direct criminal appellants and PCRA petitioners need not petition the Pennsylvania Supreme Court for allowance of appeal in order to exhaust all available state remedies.  In *Lambert v. Blackwell*, 387 F.3d 210, 231-234 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit held that Order 218 was sufficient to render discretionary review before the Pennsylvania Supreme Court "unavailable" to direct criminal appellants and PCRA petitioners.  Therefore, Molina need not show that his claims were presented to the Pennsylvania Supreme Court in a petition for allowance of appeal in order to satisfy the statutory exhaustion requirement.

Molina did have available to him, on both direct and collateral review, an appeal as a matter of right to the Superior Court.  42 PA. CONS. STAT. § 5105(a)(1).  In order to properly exhaust his federal claims, he was required to invoke "one complete round" of Pennsylvania's

14

appellate review process, thereby giving the Pennsylvania courts "one full opportunity" to resolve any issues relevant to such claims.  *O'Sullivan*, 526 U.S. at 845.  Molina took no direct appeal from his conviction and sentence.  Thus, he exhausted none of his claims on direct review.  In his appeal to the Superior Court from the trial judge's denial of his PCRA petition, Molina argued only that Abeln had been ineffective for failing to object to repeated references at trial to his status as an illegal alien.  Doc. No. 10-2, pp. 7-18.  The Superior Court rejected that argument.  *Commonwealth v. Molina*, 897 A.2d 1190 (Pa.Super.Ct. 2006).  The specific ineffectiveness claim considered by the Superior Court is not among those asserted in Molina's habeas corpus petition.[3]  Doc. No. 1, pp. 8-12.  None of the claims contained in the habeas corpus petition were presented to the Superior Court.  Accordingly, Molina has not "exhausted the remedies available" in the Pennsylvania courts for purposes of § 2254(b)(1)(A).

The next question for consideration is whether an attempt by Molina to exhaust his claims in the Pennsylvania courts would be futile.  The alternative statutory prerequisite to the litigation of Molina's federal claims in this Court (i.e., "an absence of available State corrective process" for purposes of § 2254(b)(1)(B)(i)) can be satisfied only if Pennsylvania law "clearly forecloses" review of such claims by the Pennsylvania courts.  *Lines*, 208 F.3d at 162-165.  The resolution of this question requires an analysis of Pennsylvania law.

The PCRA provides, in pertinent part, as follows:

### § 9545.  Jurisdiction and proceedings

***

---

[3]If Molina were asserting an ineffectiveness claim based on Abeln's failure to object to references at trial to his status as an illegal alien, the Court would be required to consider that claim within the strictures applicable under Title I of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  Pub. L. No. 104-132, §§ 101-108; 110 Stat. 1214, 1217-1226 (1996).

**(b) Time for filing petition.--**
(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.
(3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.
(4) For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 PA. CONS. STAT. § 9545(b).  The statutory language itself makes two things clear at the outset.  First, under subsection (b)(1), the PCRA's one-year statute of limitations would clearly apply to a "second or subsequent" PCRA petition filed by Molina.  Second, in light of subsection (b)(4), Molina cannot rely on any act or omission by Abeln to establish the applicability of the exception contained in subsection (b)(1)(i).  The remaining exceptions, of course, are clearly not applicable to this case.

The Pennsylvania Supreme Court has held that where a state prisoner sentenced by a trial court fails to file a direct appeal to the Superior Court, the PCRA's one-year limitations period begins to run upon the expiration of the limitations period for filing a direct appeal. *Commonwealth v. Brown*, 943 A.2d 264, 268 (Pa. 2008).  Because the trial judge addressed

Molina's post-sentence motion on January 28, 2005, Molina had until February 27, 2005, to appeal his conviction and sentence to the Superior Court.  PA. R. CRIM. P. 720(A)(2)(a).  He did not do so.  Therefore, his conviction became "final" on February 28, 2005.  42 PA. CONS. STAT. § 9545(b)(3); *Brown*, 943 A.2d at 268.

In order for a second PCRA petition filed by Molina to be timely under Pennsylvania law, it would have had to have been filed by February 28, 2006.  42 PA. CONS. STAT. § 9545(b)(1).  Almost three and a half years have elapsed since the passage of that deadline.  The expiration of the PCRA's one-year statute of limitations deprives the Pennsylvania courts of subject-matter jurisdiction to entertain Molina's claims in a collateral proceeding.  *Commonwealth v. Chester*, 895 A.2d 520, 524 (Pa. 2006).  Moreover, the PCRA is the *sole* basis provided under Pennsylvania law for an incarcerated prisoner to collaterally attack his or her conviction and sentence.  *Commonwealth v. Ahlborn*, 699 A.2d 718, 721 (Pa. 1997).  Under these circumstances, it would be futile for Molina to file a new PCRA petition.  *Lines*, 208 F.3d at 164-166.  Since Molina has established that "there is an absence of available State corrective process" for him to pursue, he has satisfied the statutory exhaustion prerequisite to the consideration of his claims.  *Id.* at 166.

## B.     The Procedural Default of the Ineffectiveness Claims

The inquiry, of course, does not end there.  "A finding of futility merely eliminates the procedural pretense of requiring a federal habeas petitioner to return to an unavailable state forum for nonexistent relief."  *Id.*  "Out of respect for finality, comity, and the orderly administration of justice," a federal court ordinarily will not entertain the merits of a claim that has been procedurally defaulted under state law.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

17

The Supreme Court has observed that, in this circumstance, "considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power." *Francis v. Henderson*, 425 U.S. 536, 539 (1976).  This general principle, however, is a qualified one.  "[W]hile an adequate and independent state procedural disposition strips [the Supreme Court] of certiorari jurisdiction to review a state court's judgment, it provides only a strong prudential reason, grounded in 'considerations of comity and concerns for the orderly administration of justice,' not to pass upon a defaulted constitutional claim presented for federal habeas review." *Dretke*, 541 U.S. at 392-393.  Consequently, the Court can entertain Molina's claims if he can establish "cause" for defaulting them and resulting "prejudice" to him, or if he can establish that this Court's failure to consider them would result in a fundamental miscarriage of justice.  *Hubbard*, 378 F.3d at 338.  Since Molina presents no *new* evidence of his innocence, he cannot show that a miscarriage of justice would result from this Court's failure to entertain the merits of his claims.  *Goldblum*, 510 F.3d at 225.  Accordingly, the Court need only consider whether Molina's claims can be entertained pursuant to the "cause and prejudice" exception to the procedural default doctrine.

In his habeas corpus petition, Molina asserts nine different claims.  Doc. No. 1, pp. 8-12. Eight of those claims are based on Abeln's alleged ineffectiveness.  *Id.*  Molina alleges that Abeln was ineffective for failing to present an insanity defense, for failing to move for the suppression of a statement allegedly obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), for advising him to testify in his own defense rather urging him to invoke his Fifth Amendment right to remain silent, for failing to request the sequestration of the witnesses testifying at trial, for failing to move for the suppression of evidence that his finger prints had

been left on the knife used to stab Brenda, for failing to call the mother of his three children as a

character witness, for failing to present testimony by the author of a medical report purporting to

indicate that Brenda had admitted to stabbing Molina, and for failing to raise his own

ineffectiveness before the Pennsylvania courts.  *Id.*  The final ineffectiveness claim appears to

also be based on an assertion that Molina's PCRA attorneys, Robert J. Daniels, Jr. ("Daniels"),

and Darrell C. Dethlefs ("Dethlefs"), were ineffective at the collateral review stage for failing to

raise Abeln's ineffectiveness.  Doc. No. 13, p. 6.  In a separate claim, Molina contends that the

trial judge erred in not independently advising him of his Fifth Amendment right to refrain from

testifying.  Doc. No. 1, p. 12.  The Court will address Molina's eight ineffectiveness claims

before proceeding to address his claim concerning the alleged error of the trial judge.

The PCRA specifically lists counsel's ineffectiveness as a ground upon which an

incarcerated petitioner can seek collateral relief.  42 PA. CONS. STAT. § 9543(a)(2)(ii).  In

*Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), the Pennsylvania Supreme Court held

that, as a general rule, a prisoner should wait until the collateral review stage to raise an

ineffectiveness claim.  Thus, under Pennsylvania law, "any ineffectiveness claim will be waived

only after a petitioner has had the opportunity to raise that claim on collateral review and has

failed to avail himself [or herself] of that opportunity."  *Grant*, 813 A.2d at 738.  Ineffectiveness

claims raised on direct review are dismissed without prejudice for consideration on collateral

review.[4]  *Commonwealth v. Johnson*, 966 A.2d 523, 526-527 (Pa. 2009).  The Pennsylvania

---

[4]The Pennsylvania Supreme Court permits ineffectiveness claims to be considered on direct review only
where such claims have been raised before the trial court, the trial court has heard testimony from the trial attorney
alleged to have been ineffective, and the trial court has already ruled on the claims.  *Commonwealth v. Wright*, 961
A.2d 119, 148 (Pa. 2008).  This narrow exception to the general rule prohibiting the consideration of ineffectiveness
claims on direct review is inapplicable to this case.

courts dismiss ineffectiveness claims raised on direct review even in circumstances where a prisoner's sentence is likely to expire before collateral relief becomes available. *Commonwealth v. O'Berg*, 880 A.2d 597, 601-602 (Pa. 2005); *Commonwealth v. Straub*, 936 A.2d 1081, 1083-1084 (Pa.Super.Ct. 2007).

Because Molina's ineffectiveness claims were not cognizable on direct review, they were not *defaulted* on direct review. The default for which Molina must show "cause" did not occur until the collateral review stage. *Grant*, 813 A.2d at 738. An attorney's deficient performance can be properly characterized as the "cause" of a procedural default only where such deficiency is sufficiently egregious to constitute a violation of the Constitution. *Cristin v. Brennan*, 281 F.3d 404, 420 (3d Cir. 2002). A petitioner has no *constitutional* right to counsel when pursuing collateral relief.[5] *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The *constitutional* right to the effective assistance of counsel is dependent on the *constitutional* right to counsel itself. *Evitts*, 469 U.S. at 396, n. 7. Since the Constitution afforded Molina no right to counsel during the PCRA proceedings, Molina cannot rely on the failure of Daniels or Dethlefs to raise Abeln's alleged ineffectiveness to establish "cause" for defaulting his ineffectiveness claims on collateral review. *Hull*, 991 F.2d at 91.

The Fourteenth Amendment provided Molina with a right to the assistance of counsel on direct review, since he could have appealed to the Superior Court as a matter of right. *Smith v. Robbins*, 528 U.S. 259, 276-278 (2000). Molina contends that Abeln failed to consult with him

---

[5]Molina cites the Pennsylvania Supreme Court's decision in *Commonwealth v. Albrecht*, 720 A.2d 693 (Pa. 1998), for the proposition that Pennsylvania law afforded him the right to the assistance of counsel (and, presumably, the right to the *effective* assistance of counsel) during the PCRA proceedings. Doc. No. 13, p. 3. That is not what is at issue. In the habeas corpus context, an attorney's deficient performance can serve as the "cause" for a procedural default only where it violates a petitioner's rights under the United States Constitution. *Hull v. Freeman*, 991 F.2d 86, 91 (3d Cir. 1993).

about filing a direct appeal, and that this failure to consult was the reason why no direct appeal was ever filed.  Doc. No. 13, p. 2.  A defense attorney has a constitutionally-imposed duty to consult with a convicted individual about an appeal under circumstances in which a rational individual would want to appeal (i.e., under circumstances in which nonfrivolous grounds for appeal exist).  *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).  To show prejudice (for purposes of *Strickland*) in this context, a petitioner need only demonstrate that there is a reasonable probability that, but for the lack of a consultation by his or her attorney, he or she would have pursued a direct appeal.  *Id.* at 484.  Since Molina appears to assert a catch-all ineffectiveness claim encompassing the failure of his attorneys to raise all defaulted issues in prior proceedings, the Court assumes that he asserts that Abeln was ineffective for failing to assist him in pursuing a direct appeal.  Doc. No. 1, p. 12; Doc. No. 13, p. 2.

Because the Court does not have the entire record of the PCRA proceedings, it cannot determine precisely whether Abeln was ineffective for failing to advise Molina to file a direct appeal.  It is worth noting that Molina filed his *pro se* PCRA petition *before* the expiration of the limitations period for the filing of a direct appeal.  Doc. No. 10-4, p. 3.  The filing of the PCRA petition may have affected Abeln's course of action.  In any event, there is no need for the record in this case to be supplemented, since it is already clear that Molina's ineffectiveness claim cannot proceed.  Even if it is assumed *arguendo* that Abeln was ineffective for failing to recommend an appeal, and that this ineffectiveness resulted in the waiver of the substantive issues underlying Molina's other ineffectiveness claims, Molina cannot establish "cause" for defaulting on this ineffectiveness claim at the collateral review stage.  An ineffectiveness claim such as that asserted by Molina is *itself* subject to procedural default if it is not properly

presented to the state courts.  *Edwards v. Carpenter*, 529 U.S. 446, 450-454 (2000).  It is

undisputed that when Molina appealed the denial of his PCRA petition to the Superior Court, he

did not argue that Abeln had been ineffective for failing to recommend the filing of a direct

appeal.  Doc. No. 10-2, pp. 1-19.  By failing to make such an argument, Molina defaulted *that*

ineffectiveness claim, thereby precluding him from relying on Abeln's alleged ineffectiveness to

establish "cause" for defaulting other potential claims.  *Edwards*, 529 U.S. at 453.  Therefore, all

eight of Molina's ineffectiveness claims have been procedurally defaulted.

### C.  The Self-Incrimination Clause Claim

The only remaining claim concerns Molina's contention that the trial judge erred in

failing to advise him of his right to remain silent under the Self-Incrimination Clause of the Fifth

Amendment.[6]  Doc. No. 1, p. 12.  This is not an ineffectiveness claim, but rather a claim based

on an alleged error by the trial judge.  The Court must consider this issue to have been defaulted

on direct review rather than on collateral review.  Unlike Molina's ineffectiveness claims, which

were not subject to waiver until the pendency of the PCRA proceedings, his claim concerning

the trial judge's alleged error could have been litigated on direct review.  Moreover, this claim

most likely could not have been litigated on collateral review, since the PCRA provides for relief

only with respect to issues that have not been previously waived.  42 PA. CONS. STAT. §

9543(a)(3).  An issue is considered to have been "waived" within the meaning of the PCRA if it

could have been raised, but was not raised, on direct appeal.  42 PA. CONS. STAT. § 9544(b).

Substantive errors not objected to by trial counsel can be recast as ineffectiveness claims on

---

[6]The Self-Incrimination Clause of the Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  U.S. CONST., AMEND. V.  The Self-Incrimination Clause is applicable to the States because of its incorporation within the Due Process Clause of the Fourteenth Amendment. *Dickerson v. United States*, 530 U.S. 428, 434 (2000).

collateral review.  *Commonwealth v. Rivera*, 816 A.2d 282, 287-288 (Pa.Super.Ct. 2003).  An underlying claim of trial-court error, however, is waived for PCRA purposes if it is not raised on direct review.  *Commonwealth v. Tedford*, 960 A.2d 1, 21 (Pa. 2008).  Accordingly, the Court proceeds with the understanding that Molina's Self-Incrimination Clause claim was defaulted when he failed to pursue it on direct appeal.

Since Molina had a constitutional right to counsel on direct appeal to the Superior Court, Abeln's assumed ineffectiveness can constitute "cause" for a procedural default occurring at that stage.  *Cristin*, 281 F.3d at 420.  The Court assumes *arguendo* that Abeln failed to consult with Molina about a direct appeal, and that an appeal would have been filed had such a consultation taken place.  *Roe*, 528 U.S. at 484.  Title 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  There is some disagreement among federal courts concerning whether this statutory provision applies solely with respect to § 2254(b)(1)'s statutory exhaustion requirement, or whether it also applies in the procedural default context.  *Perruquet v. Briley*, 390 F.3d 505, 515-516 (7th Cir. 2004)(collecting cases).  Nevertheless, the United States Court of Appeals for the Third Circuit has applied § 2254(b)(2) in situations involving procedural default.  *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005); *Hameen v. Delaware*, 212 F.3d 226, 251-252 (3d Cir. 2000).  Other courts within this circuit have done likewise.  *Carter v. Carroll*, 479 F.Supp.2d 432, 438, n. 4 (D.Del. 2007).  Since Molina's claim is substantively meritless, the Court will dismiss it on that ground rather than order the supplementation of the record to facilitate an inconsequential inquiry concerning whether the procedural default of his Self-Incrimination Clause claim can be excused.

Molina contends that he testified at trial only because Abeln advised him to do so, and that he would not have testified had the trial judge advised him of his right *not* to testify.  Doc. No. 1, p. 12.  The trial judge, however, had no constitutional duty to advise Molina of his rights under the Self-Incrimination Clause.  As a criminal defendant, Molina had both the right to testify and the right to remain silent.  *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).  The exercise of either right necessarily constituted a waiver of the other.  *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995).  The United States Court of Appeals for the Third Circuit has opined that "the decision to testify or not is a part of trial strategy into which a judge should not intrude."  *United States v. Gordon*, 290 F.3d 539, 546 (3d Cir. 2002).  A *sua sponte* inquiry by a trial judge concerning a defendant's decision to either testify or not testify "may have the unintended effect of swaying the defendant one way or the other."  *Pennycooke*, 65 F.3d at 11. The formulation of a defendant's trial strategy is the responsibility of his or her counsel, not the responsibility of the trial court.  *United States v. Leggett*, 162 F.3d 237, 247 (3d Cir. 1998).  An inquiry by the trial judge concerning Molina's decision to testify would not have been advisable. *Pennycooke*, 65 F.3d at 11.  It follows *a fortiori* that such an inquiry was not *constitutionally required*.

### D.    Additional Rights Provided Under Pennsylvania Law

The Court acknowledges that, under Pennsylvania law, Molina had the right to the *effective* assistance of counsel on *collateral* review.  *Commonwealth v. Albrecht*, 720 A.2d 693, 698-700 (Pa. 1998).  Molina appears to argue that relief should be granted on the ground that his PCRA attorneys were "ineffective."  Doc. No. 13, p. 3.  This argument fails for two independent reasons.  First of all, 28 U.S.C. § 2254(a) clearly provides that "a district court shall entertain an

application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties *of the United States*."  28 U.S.C. § 2254(a)(emphasis added).  "[F]ederal habeas corpus relief does not lie for errors of *state* law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(emphasis added).  Molina clearly had no *federal* constitutional right to the assistance of counsel during the pendency of his PCRA proceedings.  *Cristin*, 281 F.3d at 420.  Consequently, attorney errors on collateral review cannot be used to establish an underlying constitutional violation.  Even if Molina were able to establish an underlying constitutional violation by pointing to deficiencies in the performance of his PCRA attorneys, 28 U.S.C. § 2254(i) specifically provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for [federal habeas corpus] relief."  The purpose of habeas corpus relief is to provide a remedy for those "*in custody* in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a)(emphasis added).  It is not designed to remedy errors committed during collateral proceedings, since such proceedings cannot themselves *cause* an unlawful *detention*.  *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995)("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.")(internal quotation marks omitted).  Accordingly, the alleged "ineffectiveness" or "incompetence" of Molina's PCRA attorneys cannot provide him with a basis for seeking habeas corpus relief.

### E.      Certificate of Appealability

In the absence of a certificate of appealability ("COA"), Molina may not appeal this

Court's decision denying his petition for a writ of habeas corpus.  28 U.S.C. § 2253(c)(1)(A).  A COA may be issued only if Molina "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  With respect to the Self-Incrimination Clause claim, which this Court has rejected as substantively meritless, Molina can obtain a COA only by demonstrating that reasonable jurists would find this Court's assessment of his claim "debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  With respect to the eight ineffectiveness claims, which have been rejected on the ground of procedural default, Molina must show *both* "that jurists of reason would find it debatable whether [his] petition states a valid claim of the denial of a constitutional right" *and* "that jurists of reason would find it debatable whether [this Court is] correct in its procedural ruling."  *Id.*  Since reasonable jurists would not quarrel with this Court's assessment and disposition of the substantive and procedural issues in this case, Molina is not entitled to a COA with respect to any of the issues raised in his petition or discussed in this opinion.

## V.    Conclusion

Because Molina's eight ineffectiveness claims were procedurally defaulted on collateral review, the Court has no basis for reaching the merits of those claims.  Assuming *arguendo* that the procedural default of his Self-Incrimination Clause claim was attributable to his attorney's ineffectiveness, that claim has no substantive merit.  Since it is clear that Molina cannot obtain habeas corpus relief in any event, the Court has no reason to hold an evidentiary hearing.  Given that reasonable jurists would not view the issues in this case differently, Molina is not entitled to a COA.  An appropriate order will follow.

Dated: August 27, 2009                                 By the Court:

                                                       _____
                                                       Lisa Pupo Lenihan
                                                       United States Magistrate Judge




cc: Counsel of record

**YERKO ANTONIO MOLINA**
GA-2675
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510